IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANTONIO PIZARRO-ADORNO [1], <br><br> Defendant. | CRIMINAL NO. 23-271 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On July 13, 2023, a grand jury returned an Indictment against Defendant Antonio Pizarro-Adorno ("Pizarro-Adorno" or "Defendant") charging him in Count One with destruction, alteration, or falsification of records in federal investigation in violation of 18 U.S.C. § 1512(c)(1); and in Count Two with destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a). (Docket No. 3).

On March 6, 2025, the jury trial began and lasted five days. On March 12, 2025, after the close of the government's case-in-chief, Pizarro-Adorno made an oral motion under Fed.R.Crim.P. 29(a) which the Court denied. (Docket No. 67). On that same day, after Defendant rested without presenting any evidence on his behalf, he renewed his motion under Fed.R.Crim.P. 29 which was again denied. (*Id.*). The next day, the jury found Pizarro-Adorno guilty on both counts. (Docket No. 70).

Before the Court is Pizarro-Adorno's succinct Motion for Judgment of Acquittal under Fed.R.Crim.P. 29(c)(1) which was filed on April 30, 2025, in which he makes a general motion for judgment of acquittal to preserve, for appeal purposes, all challenges to the sufficiency of the evidence. In addition, Pizarro-Adorno particularly posits that the

<u>United States of America v. Antonio Pizarro-Adorno [1]</u>
Opinion and Order
Crim. No. 23-271 (CVR)
Page 2

evidence presented by the government was insufficient to sustain the conviction beyond a reasonable doubt as to both counts. As to Count One, he contends the government presented insufficient evidence to prove beyond a reasonable doubt, among other things, that he acted corruptly. As to Count Two, he avers the government's evidence failed to establish that he intended for the taking of $170.00 to affect the search and seizure related to the ongoing federal investigation into La Perla Ward. (Docket No. 75).

On May 5, 2025, the government filed its Response in Opposition to Defendant's Motion for Judgment of Acquittal, moving the Court to deny the motion because the evidence presented at trial, when viewed in the light most favorable to the government, is more than sufficient to support the jury's findings of guilty as to Counts One and Two. (Docket No. 77).

After a careful review of the jury trial transcripts and the evidence on record, Defendant's Motion for Judgment of Acquittal is DENIED. (Docket No. 75). As summarized below, the government presented sufficient evidence, physical and testimonial, for the jury to find that the government proved all the essential elements of the crimes for which Pizarro-Adorno is charged in Counts One and Two beyond a reasonable doubt.

## LEGAL STANDARD

Rule 29 of the Fed.R.Crim.P. permits a court to "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges

the jury, whichever is later." *Id.*, R. 29(c)(1).[1] "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." *Id.*, R. 29(c)(3).

In reviewing a Rule 29 motion, a court considers the evidence "in the light most favorable to the government." United States v. Gómez-Encarnación, 885 F.3d 52, 55 (1st Cir. 2018). "The verdict must stand unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt." United States v. Fernández-Jorge, 894 F.3d 36, 42 (1st Cir. 2018) (cleaned up).

Thus, the analysis under Rule 29 "begin[s] by considering whether any rational fact-finder could have concluded beyond a reasonable doubt that" the defendant committed each element of the offense for which he was convicted. *Id.*, p. 3. In doing so, the court "take[s] into account all evidence, both direct and circumstantial, and resolve[s] evidentiary conflicts and credibility disputes in favor of the jury's verdict." United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012). The Court will give "equal weight to direct and circumstantial evidence," see United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013), and refrain from "assess[ing] the credibility of witnesses, as that is a role reserved for the jury." United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008). If, however, evidentiary conflicts, credibility questions or competing inferences (two or more of which are plausible) arise, the trial judge must resolve them in the prosecution's favor. United

---

[1] Defendant was granted until April 30, 2024, to file post-trial motions. (Docket No. 70).

Case 3:23-cr-00271-CVR    Document 80    Filed 05/27/25    Page 4 of 14

United States of America v. Antonio Pizarro-Adorno [1]
Opinion and Order
Crim. No. 23-271 (CVR)
Page 4

States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995). In essence, "[t]he court's duty is to make sure the evidence is sufficient to support the conviction." United States v. Guzmán-Montañez, 756 F.3d 1, 10 (1st Cir. 2014). Therefore, "[t]he government need not succeed in eliminating every possible theory consistent with the defendant's innocence." United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009). "And circumstantial evidence alone may be sufficient to provide a basis for conviction." United States v. Rodríguez-Durán, 507 F.3d 749, 758 (1st Cir. 2007).

Consequently, "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." Lipscomb, 539 F.3d 32, 40 (quoting United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2005)); United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010). "[A] guilty verdict may rest on reasonable factual inferences drawn from direct or circumstantial evidence, but not on insupportable or overly speculative evidentiary interpretations . . . And, it is within the jury's purview to evaluate competing factual inferences and theories that are supported by the evidentiary presentation." United States v. Ridolfi, 768 F.3d 57, 61 (1st Cir. 2014) (citations omitted).

Ultimately, the court need only determine that the conviction "finds support in a plausible rendition of the record." United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012). "Reversal is warranted only where no rational factfinder could have concluded that the evidence presented at trial, together with all reasonable inferences, established each element of the crime beyond a reasonable doubt." United States v. McDonough, 727 F.3d 143, 152 (1st Cir. 2013) (cleaned up).

## ANALYSIS

**A. Count One: Destruction, alteration, or falsification of records in a federal investigation in violation of 18 U.S.C. § 1512(c)(1).**

To convict Pizarro-Adorno of destruction, alteration, or falsification of records in a federal investigation in violation of 18 U.S.C. § 1512(c)(1), as charged in Count One, the government had to prove each of the following elements beyond a reasonable doubt, to wit, that Pizarro-Adorno: 1) altered, destroyed, mutilated or concealed a tangible object; in this case money, or he attempted to do so; 2) acted knowingly; 3) acted corruptly; and 4) acted with intent to impair the object's integrity or availability for use in an official proceeding. The Court instructed the jury that "corruptly" means with the purpose of wrongfully impeding the due administration of justice. The term "official proceeding" was also instructed to the jury to mean that, as used in Count One, the investigation being conducted by U.S. Department of Homeland Security ("HSI") and U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") related to drug trafficking in a community in San Juan, Puerto Rico. An official proceeding need not be pending or about to be instituted at the time of the offense. However, the government must prove beyond a reasonable doubt that Defendant foresaw the particular official proceeding. The term "official proceeding" means a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, a Federal grand jury, Congress, or a Federal Government agency which is

United States of America v. Antonio Pizarro-Adorno [1]
Opinion and Order
Crim. No. 23-271 (CVR)
Page 6

---

authorized by law. [2]

Defendant contends in a single paragraph that the government failed to meet each of these elements and presents some "non-exhaustive examples" of the way the government's evidence failed. Defendant briefly posits that "the trial evidence was insufficient to establish beyond a reasonable doubt that the $170, in particular the $100 bill and the $50 bill, were brought into the precinct and placed on the table inside the conference room or that Mr. Pizarro gained access to these $170." (Docket No. 75, pp. 3-5). In addition, Pizarro-Adorno claims "the government failed to prove that Mr. Pizarro acted with the specific intent to act corruptly. There was no testimony that Mr. Pizarro took $170 with the specific intent to act corruptly to prevent the cash from being used in a pending federal investigation." (*Id.*, p. 4).

In turn, the government posits that it presented sufficient evidence for the jury to find beyond a reasonable doubt that Pizarro-Adorno committed each of the elements of the offense charged in Count One.

## B. Count Two: Destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a).

To convict Pizarro-Adorno of Count Two of the Indictment for destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a), the government had to prove each of the following elements, to wit, that Pizarro-Adorno: (1) knowingly and willfully took possession of $170 U.S. currency, or attempted to do so; (2) this

---

[2] *See,* Jury Instructions 12 and 13 as instructed to the jury. (Docket No. 68, pp. 15-16).

occurred before, during, or after a search or seizure of the property (money); (3) that the search or seizure was by a person authorized to make the search or seizure; and (4) that the action was done with the purpose of preventing or impairing the Government's lawful authority to take said property into its custody or control, or to continue holding said property under its lawful custody and control. The Court instructed the jury that "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident. To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed - that is to say, with bad purpose, either to disobey or disregard the law - not to act by ignorance, accident, or mistake.[3]

Defendant, in a single paragraph, asserts as to Count Two that, among other issues, the government failed to prove beyond a reasonable doubt that he knowingly took the $170.00 subject to search and that the same was done knowingly to prevent its use in an ongoing federal investigation, rather than simply taking $170.00 for personal gain. Defendant claims that the evidence presented, even in the light most favorable to the government, did not show that he knowingly took the money. As another example, Pizarro-Adorno claims that only two witnesses testified to have seen him place a green paper ball into his shoe, but the same two witnesses both testified that the green paper ball was not found in his shoe, but rather on the floor nearby, and that they did not see Pizarro-Adorno throw any ball of money. Other witnesses concurred that they did not see

---

[3] *See,* Jury Instructions 14 and 15 as instructed to the jury. (Docket No. 68, pp. 17-18).

Pizarro-Adorno either touch the money or throw any ball of money on the ground. (Docket No. 75, p. 5).

Like Count One, the government contends that it presented sufficient evidence for the jury to find beyond a reasonable doubt that Pizarro-Adorno committed each of the elements of the offense as charged in Count Two.

**C. The government presented sufficient evidence to prove, beyond a reasonable doubt, all the elements of the offenses charged in Counts One and Two.**

Upon a careful review, the Court finds that the government presented sufficient evidence, physical and testimonial, to prove all the elements of the offenses charged in Counts One and Two.

Unlike Pizarro-Adorno, the government submitted in its Opposition a non-exhaustive summary of the evidence (Docket No. 77, pp. 5-10) presented at trial to show that said evidence was sufficient for the jury to conclude, beyond a reasonable doubt, that Defendant committed each element of the offenses for which he was convicted. For judicial economy, and due to the accuracy of the summary of evidence presented at trial as proffered by the government, the Court incorporates said summary herein:

> 9. The United States presented evidence at trial that on or about April 27, 2023, Defendant was a Puerto Rico state agent with the Special Investigations Bureau (Negociado de Investigaciones Especiales), or the NIE, and he had been so for more than 12 years. Defendant had been working as a Task Force Officer (TFO) with HSI for several years and was an experienced agent in matters of federal criminal investigations. For some time before April 27, 2023, Defendant had been working on an investigation related to the La Perla Ward in Old San Juan, Puerto Rico, as part of the

HSI team. The investigation was a federal investigation led by ATF and HSI and pertained to the drug-trafficking activities in La Perla committed by single individuals as well as by groups of people as part of a conspiracy.

10. The jury heard the testimony of several law enforcement agents about the investigative efforts related to the before-mentioned federal investigation. Witnesses testified that the ultimate goal was to present the evidence to the United States Attorney's Office in the District of Puerto Rico for prosecution via an indictment in federal court to combat the illegal drug-trade and violence in San Juan. The testimony included assertions by ATF SA Roberto Santiago that Defendant had been made aware of the importance of the investigation and of at least one of the primary targets of that investigation known as "Kidanie," who was not a law enforcement cooperator.

11. On April 27, 2023, Defendant was sent by himself to represent the federal agencies of HSI and ATF at a law enforcement operative in La Perla with the Puerto Rico Police Bureau Strike Force. Defendant was responsible for the federal-government-seizure of any evidence at the operative and communicating with the federal special agents in charge so the evidence could be seized as part of the federal investigation. Any money seized was expected to be taken into the custody and control of HSI.

12. Prior to arriving at La Perla, Defendant met at the parking area of the Hiram Bithorn in San Juan with many agents from the Strike Force Units to prepare for the operative. Many of those Puerto Rico Police Bureau Strike Force agents who testified at trial met Defendant for the first time on that day and most of them believed Defendant was an HSI federal special agent and not a TFO. Many agents testified to their deep respect for federal authorities and emphasized how meaningful it was to collaborate in federal investigations, such as the one in La Perla.

13. In the late afternoon of April 27, 2023, two individuals were arrested by the Puerto Rico Police Bureau Strike Force agents in La Perla, both in possession of controlled substances and money. One in particular was an individual by the name of Christian Cespedes. He was arrested by Puerto Rico Police Bureau Strike Force agent Escalera who testified that he arrested Mr. Cespedes after seeing him running away from the known drug point in La Perla with a marijuana cigarette in his mouth. Mr. Cespedes was also carrying a brown fanny pack that contained controlled substances. The jury also heard evidence that during the operative at La Perla, Puerto Rico Police Bureau Strike Force agents encountered their prime suspect Kidanie

Case 3:23-cr-00271-CVR   Document 80   Filed 05/27/25   Page 10 of 14

United States of America v. Antonio Pizarro-Adorno [1]
Opinion and Order
Crim. No. 23-271 (CVR)
Page 10

near the drug point in La Perla. But Defendant ordered the agents to release Kidanie under the excuse that he was a cooperator even though he knew Kidanie was not in fact a cooperator.

14. Once Mr. Cespedes was under custody, he was taken to the police van stationed by the Norzagaray Street in front of La Perla together with the other arrested individual. There, agent Escalera briefly searched Mr. Cespedes and heard when Mr. Cespedes accused him of planting drugs in his pocket. Agent Escalera became upset with the false accusation and decided to account for the evidence right there so Mr. Cespedes could see what the agent was seizing from him. Among that evidence was the money Mr. Cespedes had in his pocket. Agent Escalera started to count the money in the presence of other fellow officers such as Puerto Rico Police Bureau Strike Force Sergeant Matos. There, agent Escalera observed there was a lot of money in different denominations and was surprised to find a $100 and a $50 dollar bill among them. Notwithstanding, Sgt. Matos instructed agent Escalera to finish counting the money at the precinct because a lot of traffic was gathering at the location, and it was a security risk. As a result, agent Escalera arranged the bills in their order of denominations, from highest to smallest, and placed the money in the brown fanny pack neatly folded.

15. Mr. Cespedes's brown fanny pack was then placed in the front of the van between the driver and front passenger seats where other agents who testified at trial were seating [sic] on the way to the police precinct. The testimony established that absolutely nobody opened that fanny pack while in the van on the way to the precinct. Once at the precinct, the integrity of that fanny pack remained intact from the moment the fanny pack was placed in the van to the moment agent Escalera placed the brown fanny pack on a display table in the academy hall at the police precinct Hato Rey Oeste.

16. Meanwhile, Sgt. Matos had left La Perla with Defendant in an official HSI vehicle and informed Defendant that a lot of money had been seized in La Perla, but didn't tell Defendant how much money had been seized or the denomination of the bills. Defendant wasn't aware agent Escalera knew the money seized included a $100 and a $50 bill. And so, Defendant rushed to get to the precinct before the police van. Once there, Defendant was the first person to open Mr. Cespedes's brown fanny pack and touch the money inside of it at the police precinct, as testified by many law enforcement agents and by Defendant's own admissions to FBI SA Rosa Milian.

17. Agent Escalera also testified that he tried to see what Defendant was doing with the fanny pack, but Defendant assumed a blocking position that

prevented agent Escalera from seeing exactly what Defendant was doing with the money. After a brief moment, agent Escalera got a hold of the money from the fanny pack and immediately noticed the $100 and $50 bills were missing. Agent Escalera testified that he immediately and frantically called to everyone's attention that money was missing from the evidence he had just lawfully seized. Soon after, Puerto Rico Police Bureau Strike Force agents Escalera, Llorens and Melendez saw Defendant reacting strangely. Defendant's first reaction was to lift his arms but with one hand in a closed fist. Then Defendant argued to the fellow officers that the missing bills had never been in the brown fanny pack and later claimed they must have gotten misplaced. Testimony established that Defendant got nervous, looked pale, and started walking around nervously and worried near the display table and the cubicles next to it.

18. Soon after agent Escalera alerted that money was missing, Defendant hunched over to allegedly tie his shoes by putting his right foot on one of the benches near the cubicles next to the display table. Agent Llorens and agent Frankie Torres were near him and kept an eye on Defendant because they found odd how Defendant was acting. At that moment, agents observed Defendant use his closed fist to come close to his shoe and try to introduce a ball of dollar bills into his shoe. Defendant was caught red-handed by the agents trying to hide and steal the money from the drug seizure in La Perla.

19. The agents grabbed Defendant by the arms before he could successfully stuff the money in his shoe. Immediately after the agents grabbed Defendant, agent Carrasquillo contemporaneously saw a ball of money on the floor under the cubicle where the agents grabbed Defendant. The ball of money had not been there before that moment and it was exactly comprised of one $100 bill, one $50 bill and a $20 bill that agent Escalera had no way of knowing was also missing because there were many $20 bills in the brown fanny pack that he hadn't counted yet. The jury also considered how Defendant acted when he was searched by the agents. Defendant invoked his innocence and emptied his pockets but when the agents asked him to hand over some crunched up disposable gloves he took out of one of his pockets Defendant refused as he also refused to hand over the keys to his HSI car.

(Docket No. 77, pp. 5-10).

The evidence at trial in this case included the testimonies of multiple state and federal law enforcement agents (HIS, FBI and ATF) who witnessed how the facts

developed that day at La Perla Ward and later at the precinct, including Defendant's actions that day. The witnesses presented during the trial testified based on personal knowledge and their own observations as the events transpired during the operative at La Perla Ward and later at the precinct where the seized evidence was displayed and processed. The government was able at trial to carefully weave step by step the participation of each of the witnesses that day and their interactions with Pizarro-Adorno, whom they believed was the representative of the federal government for the operative that day. The government also presented at trial numerous photographs and physical evidence which illustrated to the jury the accounts of the witnesses. (Docket No. 74, Exhibit list).

In essence, from the evidence summarized above, the jury could find and infer that Defendant corruptly, willfully and knowingly took the $170.00 in cash consisting of one $100.00 bill, one $50.00 bill and one $20.00 bill from inside the brown fanny pack at the display table at the precinct, crunched up the bills into a ball of money that he kept in his hand, attempted to hide the ball of money in his shoe after agent Escalera alerted that money from his seizure was missing, was not able to hide the money because the fellow agents present reacted quickly, and dropped the ball of money next to him on the floor below a cubicle next to the display table at the precinct.

The government also presented sufficient evidence from which the jury could find or reasonably infer that Defendant (an experienced NIE state law enforcement agent and TFO who was familiar with federal criminal investigations) knew that, by taking the

$170.00 from the evidence seized that day or just concealing it, he was corruptly tampering with the lawful seizure from agent Escalera, was harming or impairing the federal investigation of La Perla Ward, and was preventing the federal government's lawful authority to take custody and control of that evidence. The $170.00 was part of the evidence seized by HSI at La Perla Ward and was going to be used in the federal investigation against drug trafficking in La Perla Ward and presented by the United States Attorney's Office to a grand jury with the purpose of obtaining an indictment. However, Defendant's illegal actions of taking the $170.00 tainted all the evidence seized that day, thus curtailing the whole investigation.

In sum, the government bore the burden of proving the elements of the offenses charged in Counts One and Two with direct or circumstantial evidence establishing or permitting a reasonable inference beyond a reasonable doubt. The Court observed the trial first-hand and has conducted a careful review of the parties' submissions, the transcribed testimonies of the trial witness, and all admitted exhibits. Giving due deference to the jury's verdict and applying the prosecution-friendly standard governing Rule 29 challenges, the Court finds that, from the evidence and the inferences drawn therefrom, the jury easily could have found beyond a reasonable doubt that Pizarro-Adorno: (1) corruptly concealed or attempted to conceal $170.00 in cash seized by the Puerto Rico Police Bureau with the intent to impair its integrity and availability for use in an official investigation being conducted by HSI and ATF related to drug trafficking in a community in San Juan, Puerto Rico, as charged in Count One; and (2) knowingly and

<u>United States of America v. Antonio Pizarro-Adorno [1]</u>
Opinion and Order
Crim. No. 23-271 (CVR)
Page 14

willfully took possession of the $170.00 in cash or attempted to do so for the purpose of preventing and impairing the government's lawful authority to take said property into its custody and control after the legal search and seizure of the $170.00 by the Puerto Rico Police Bureau, as a law enforcement entity authorized to make such search and seizure, as charged in Count Two.

## CONCLUSION

Based on the foregoing, Defendant Pizarro-Adorno's Rule 29 Motion for Judgment of Acquittal (Docket No. 75) is DENIED.

IT SO ORDERED.

In San Juan, Puerto Rico, this 27th day of May of 2025.

                                        s/ CAMILLE L. VELEZ-RIVE
                                        CAMILLE L. VELEZ-RIVE
                                        UNITED STATES DISTRICT JUDGE